ORIGINAL

**COX, WOOTTON, GRIFFIN
HANSEN & POULOS, LLP**
Richard C. Wootton (Hawaii SBN 0006815)
190 The Embarcadero
San Francisco, California 94105
Telephone No.: (415) 438-4600
Facsimile No.: (415) 438-4601

Attorneys for Defendants and
Third-Party Plaintiff
KAHIKOLU, LTD.
dba Frogman Charters

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 03 2006

at _____ o'clock and _____ min. ___
SUE BEITIA, CLERK

# UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER MacDONALD, ) | Case No.: CV 02-00084 ACK LEK |
| Plaintiff, ) | |
| v. ) | |
| KAHIKOLU, LTD. dba Frogman ) Charters., ) | |
| Defendant ) | **DATE: October 27, 2006** |
| ———————————————— ) | **TIME: 9:30 a.m.** |
| ) | **Hon. Leslie E. Kobayashi** |

# DEFENDANT'S POST REMAND OPPOSTION BRIEF

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

1S1 MacDonald

Case No. CV 02-00084 ACK LEK

# TABLE OF CONTENTS

I.    INTRODUCTION...................................................1

II.   THE FINDINGS OF FACT AND CONCLUSIONS OF LAW.......2

      A.    FACTS.....................................................2

      B.    CONCLUSIONS OF LAW.....................................5

III.  THE NINTH CIRCUIT DECISION AND SCOPE OF...............7
      THE REMAND ORDER

IV.   THE FINDINGS OF FACT RULE OUT *PER SE LIABILITY*........8

V.    THE PENNSYLVANIA RULE IS IRRELEVANT HERE..........14

VI.   CONCLUSION.....................................................30

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

ISI.MacDonald

DEFENDANT'S POST REMAND OPPOSITION BRIEF

Case No.  CV 02-00084 ACK LEK

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American River Trans Co. v. Kavo Kaliakra SS,*
 148 F.3d 446 (5th Cir. 1998) ................................................................. 23

*Candies Towing Co. v. M/V B & C Eserman,*
 673 F.2d 91 (5th Cir. 1982) ............................................................ 21, 24

*Fuszek v. Royal King Fisheries, Inc.,*
 98 F.3d 514 (9th Cir. 1996) ..................................................................... 5

*In re Complaint of Nautilus Motor Tanker Co.,*
 85 F.3d 105 (3d Cir. 1996) .................................................................... 24

*Director General of India Supply Mission v. S.S. Maru,*
 459 F.2d 1370 (2d Cir. 1972) ............................................................... 21

*Gosnell v. United States,*
 262 F.2d 559 (4th Cir. 1959) .......................................................... 22, 23

*Kernan v. American Dredging Co.,*
 355 U.S. 426 (1958) ................................................................. 1, 2, 7, 15

*MacDonald v. Kahikolu,*
 442 F.3d 1199 (9th Cir., 2006) ............................................................... 7

*Marine Solution Services v. Horton*
 70 F.3d 393 (Alaska 2003) ...................................................... 14, 19, 21

*Mathes v. The Clipper Fleet,*
 774 F.2d 980 (9th Cir. 980) ............................................... 15, 19, 20, 29

*Mawari v. Interocean Ugland Mgmt. Corp.,*
 1999 U.S. Dist. LEXIS 15797 ............................................................... 17

*Moody v. Boston and Maine Corporation,*
 921 F.2d 1 (1st Cir. 1990) ............................................................... 28, 29

*Pan America Grain Manufacturing Co. v. Puerto Rico Ports Authority,*
 295 F.3d 108 (1st Cir. 2002) ................................................................. 23

*Pennzoil Producing Co. v. Offshore Express, Inc., et al.,*
 943 F.3d 1465 (5th Cir. 1991) .............................................................. 21

*Pierro v. Carnegie-Illinois Steel Corp.,*
 186 F.2d 75 (3d Cir. 1950) .............................................................. 16, 17

*Reyes v. Vantage Steamship Co., Inc.,*
 609 F.2d 140 (5th Cir. 1980) ................................................................ 15

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

DEFENDANT'S POST REMAND OPPOSITION BRIEF

*In re Seaboard Shipping Corp.,*
   449 F.2d 132 (2d Cir. 1971) ............................................................ 15

*Seaboard Tug & Barge v. Rederi AB/Disa,*
   213 F.2d 772 (1st Cir. 1954) .......................................................... 22

*States Steamship Co. v. Permanente Steamship Corp.,*
   231 F.2d 82 (9thCir. 1956) ............................................................ 21

*The Denali,*
   105 F.2d 413 (9th Cir. 1939) .......................................................... 21

*The Princess Sophia,*
   61 F. (9th Cir. 1932) ...................................................................... 21

*U.S. v. Nassau Marine Corp., et al.,*
   778 F.2d 1111 (5th Cir. 1985) ........................................................ 21

*Waterman Steamship Corp. v. Gay Cottons,*
   441 F.2d 724 (9th Cir., 1969) ........................................................ 21

*Wilkins v. American Export Isbrandtsen Lines, Inc.,*
   446 F.2d 480 (2d Cir. 1971) ............................................... 15, 16, 17

*Wills v. Amerada Hess Corp.,*
   379 F.3d 32 (2d Cir. 2004) ............................................................ 18

## FEDERAL STATUTES

46 C.F.R.
   § 15.101 ........................................................................................ 19

   § 185.10 ........................................................................................ 20

   § 197.204 ...................................................................................... 18

   § 197.420 .................................................................................... 9, 18

46 U.S.C.S.
   § 222 ............................................................................................ 17

   §§ 235 and 673 ............................................................................ 17

Hours of Service Act,
   45 U.S.C. § 62 .............................................................................. 28

## OTHER AUTHORITIES

G. Gilmore & C. Black,
   *The Law of Admiralty* § 7-5 at 494 (2d ed. 1975) ...................... 21, 22

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 438-4601

## I.    **INTRODUCTION**

This case was tried before Your Honor in May, 2003.  The plaintiff argued that plaintiff was liable for general maritime law unseaworthiness and Jones Act negligence and *negligence per se*.  The latter theory was based on the argument that Defendant did not have a dive manual setting forth procedures for its *SCUBA dive masters* as required by Coast Guard diving regulations for *commercial divers*.  Your Honor found for the defendant.

With respect to the *negligence per* se argument, the Court concluded that the Coast Guard regulations related to SCUBA diving were irrelevant to free diving activity.  Plaintiff further argued that this Court should apply the "*Pennsylvania* rule" to these Jones Act cases.  Although the violated Coast Guard regulation had absolutely nothing to do with either plaintiff's free-diving activity or the navigation of the vessel which transported him to the dive site, plaintiff argued that the rule shifted the burden to defendant to prove that the violation could not have contributed to the accident.  This Court rejected that argument as well.

Plaintiff appealed on the basis that the *per se* liability standard applied by this Court was inconsistent with the Supreme Court standard set forth in *Kernan v. American Dredging Co.*, 355 U.S. 426 (1958).  Appellant also

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 438-4601

again urged application of the *Pennsylvania* rule. The Ninth Circuit specifically noted with approval this Court's conclusions that free diving is an easily learned skill that does not require formal training, that free diving below 20 feet is not inherently dangerous as plaintiff's expert claimed, that plaintiff was an accomplished free diver who knew how to equalize pressure, and that the Coast Guard regulations cited by plaintiff did not apply to free divers like plaintiff. Nonetheless, the Ninth Circuit reversed for further findings whether this Court applied the proper causation standard called for by the *Kernan* decision. Its decision ignored Appellant's *Pennsylvania* rule argument.

The parties agreed to further briefing in light of the Ninth Circuit decision. Defendant is confident that given this Court's factual findings, Your Honor will confirm that (1) the lack of a dive manual for Defendant's SCUBA masters, who have nothing to do with the work plaintiff was doing, didn't play any part in his accident, and (2) the *Pennsylvania* rule is irrelevant here.

## II.    THE FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    FACTS

We reiterate the following factual determinations made by the Court in

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

finding for the Defendant at trial.

Defendant runs recreational SCUBA and snorkel charters to dive/snorkel sites off the Maui coast. (FOF 4). It employs crewmembers (deckhands) whose daily job duties include making free dives (i.e., without scuba or surface supplied air or mixed gas) to depths in excess of 20 feet (i.e., to tie up and let go the charter boats from submerged buoys at the dive sites). (FOF 5) Because its deckhands' work included free diving on a regular basis, Defendant only hired people with free diving experience. (FOF 6) While Defendant therefore gave new hires only rudimentary instruction about free diving, it met with each new hire (to confirm he or she knew how to free dive). (FOF 7-8)

Despite finding that Defendant's training of new hires about how to equalize pressure and the risks of barotrauma was "done in an extremely casual manner," Your Honor found that free diving "is not an inherently dangerous activity, and safely equalizing pressure is an easily learned skill – often without formal training and through mere trial and error." (FOF 8-9). The Court found that prior to Plaintiff's injury, Defendant's employees made **thousands** of free dives without incident or injury and no deckhand ever expressed concerns about the effectiveness of its training methods about

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

ISI:MacDonald
DEFENDANT'S POST REMAND OPPOSTION BRIEF

3

Case No.  CV 02-00084 ACK LEK

equalizing pressure in the ears during a dive. (FOF 21).

Even more significantly, this Court found that Plaintiff was an experienced free diver when hired who quickly became an accomplished free diver. While employed by Defendant, he worked 86 days and made 120 trips before his accident. In these trips, he not only made several dives every day in the 20 – 30 foot range to tie up or let go the buoys, he *routinely* dove to 30, 40, 50 feet and deeper to pick up snorkels and masks, bring sea creatures top side to show to the tourists, and just for fun. The undisputed evidence was that he quickly became one of the company's best free divers. (FOF 7 and 10) The Court found that he knew how to safely equalize pressure in his ears. (FOF 19).

The plaintiff's injury occurred on September 24, 2001. When the vessel arrived at the second dive site of the day, the mooring buoy had sunk in 46 feet of water. Plaintiff dove in to try to locate the buoy from the surface. When he saw it, he, the captain and the SCUBA instructor discussed the situation. He declined the SCUBA instructor's offer to get the buoy, assuring him he could do it, (since he'd made dives to that depth and deeper before without problem). Contrary to plaintiff's theory, he was not forced to dive – the Court instead noted that the captain and crew were very

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

professional.  (FOF 11-15, 20).

The plaintiff was able to clear his ears twice enroute to the bottom, but had trouble with the third attempt.  He heard a "crackling noise," completed the dive and returned to the surface. (FOF 16)  Unfortunately, it was eventually confirmed that during the dive, he had suffered a perilymph fistula (perforation of the round or oval window between the middle and inner ear).

## B.    CONCLUSIONS OF LAW

Based on Your Honor's findings of fact, you made the following conclusions of law.

With respect to Jones Act negligence, this Court first found that plaintiff had not met the Ninth Circuit standard of proving *negligence per se.* In *Fuszek v. Royal King Fisheries, Inc.,* 98F.3d 514 (9th Cir. 1996), the Ninth Circuit held that proving a regulatory violation requires plaintiff to establish a violation of Coast Guard regulations, plaintiff's membership in the class of intended beneficiaries of that regulation, an injury of the type which the regulations were intended to prevent, the unexcused nature of the regulatory violation, and causation. (COL 1)  Your Honor held that because the cited Coast Guard regulations requiring an operations manual for commercial divers did not apply to free divers, plaintiff failed to meet his burden of

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 438-4601

proof.

With respect to plaintiff's negligence claim, Your Honor held that while Defendant's lack of a formal free diving training program constituted a breach of its duty to provide a safe place to work, plaintiff failed to prove the notice element of his claim.  In support of that conclusion, this Court specifically found that plaintiff was an experienced diver who had regularly made safe dives without any ear pain during the course of his employment and knew how to safely equalize, and that Defendant's employees had made thousands of similar safe dives. (FOF 16)  Your Honor further found that Defendant's screening process ensured that it hired only experienced free divers, and given its accident free history, it therefore had no basis to foresee that its casual training methods regarding the risk of barotrauma might cause such an injury. (FOF 17 – 19)  To the contrary, the Court emphasized that free diving is not inherently dangerous, that plaintiff was experienced and that he and his co-workers had made thousands of safe free dives.

With respect to unseaworthiness, the Court found that the fact that Defendant breached its duty to provide a safe place to work by not providing more formalized training, it nonetheless found that this didn't establish unseaworthiness either.  The Court noted that the captain and crew of the

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 438-4601

vessel were "extremely experienced and competent and did not force

Plaintiff to perform a task he could not safely perform or did not want to do."

## III.   THE NINTH CIRCUIT DECISION AND SCOPE OF THE REMAND ORDER

Plaintiff appealed only the issue of *negligence per se*, arguing that the

*Fuszek* decision did not set the standard established by the Supreme Court in

*Kernan.*  The Ninth Circuit held that to establish *per se* liability, the plaintiff

must prove that defendant breached a Coast Guard regulation and that its

breach caused the accident.  The remand order called for this Court to

determine if defendant's failure to comply with Coast Guard regulations

related to commercial diving played any part, no matter how slight, in

causing the accident.  (*MacDonald v. Kahikolu,* 442 F.3d 1199, 1203 (9th

Cir., 2006)

On appeal, the Ninth Circuit acknowledged that this Court credited the

testimony of Defendant's expert, Glennon Gingo, (who explained that diving

to depths below twenty feet is not inherently dangerous, learning to equalize

pressure during dives is an easily learned skill which doesn't require formal

training, and plaintiff was an experienced diver who knew how to equalize

pressure) over the testimony of plaintiff's expert (who testified that diving to

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

ISI MacDonald

DEFENDANT'S POST REMAND OPPOSTION BRIEF

Case No.  CV 02-00084 ACK LEK

depths below twenty feet is per se unsafe and that the lack of a dive

operations manual, *which would have prevented such diving*).  While

plaintiff's Opening Brief herein focuses primarily on whether the

*Pennsylvania* rule applies in this case, the Ninth Circuit opinion didn't give

this argument enough credence to even mention it, much less order this Court

to address it further.

## IV.    THE FINDINGS OF FACT RULE OUT *PER SE LIABILITY*

The plaintiff nonetheless stubbornly insists that "the lack of a policy

requiring a safe descent rate alone played at least some rule in producing

Chris MacDonald's injury" (Opening Brief, p. 11)  He therefore contends

that that the lack of a diving operations manual required for commercial

diving caused the accident because it would have precluded a safe descent

rate in excess of 70 feet per minute.

We first note that the only evidence that one shouldn't descend faster

than 70 feet per minute came from Mr. Almaraz.  He also testified, however,

that any free diving greater than 20 feet deep is unsafe and that no free

diving should be permitted in the workplace.  (Volume 3, p. 151: 19-23,

189:19-21, pp. 202:16-204:2.)  This Court rejected these contentions,

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

199 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

adopting Mr. Gingo's opinion that such dives are safe.  Given that Mr. Gingo is one of the most knowledgeable free divers in the world while Mr. Almaraz admitted he had only minimal experience and was not an expert in the field (Volume 3, pp 188:25-189:19), it is obvious why the Court adopted Mr. Gingo's opinion.  We see no reason, based on either his experience or stated rationale, why the Court should adopt Mr. Almaraz's "descent rate theory either."

First, plaintiff failed to introduce any evidence that plaintiff in fact did descend faster than 70 feet per minute.  While Mr. Almaraz contended that a 46' dive was too deep to make using a 70' descent rate and 60' ascent rate, he didn't explain why he offered no proof that Plaintiff couldn't hold his breath for 90 seconds.

Second, plaintiff's assumption that a diving operations manual would have imposed a "safe descent rate" of less than seventy feet per minute on free divers is nonsense.  The Coast Guard and OSHA regulations requiring operations manuals (46 C.F.R. 197.420 and 29 C.F.R. 1910.420, copies attached) require many topics to be addressed for divers breathing compressed air, including safety procedures and checklists for the diving

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 438-4601

ISI MacDonald                                                                    Case No.  CV 02-00084 ACK LEK
DEFENDANT'S POST REMAND OPPOSITION BRIEF

mode used; assignments and responsibilities of the dive team members; equipment procedures and checklists for diving modes; emergency procedures for fire, equipment failure, adverse weather, medical illness, and treatment of injury; and procedures for use of hand-held power tools, welding and burning equipment, and explosives. The regulations say absolutely nothing about any provisions relating to descent rates or competition among divers regulated thereby. (Indeed, they say absolutely nothing about free divers at all.)

The only evidence about what an operations manual supposedly *would have said* came from Mr. Almaraz, who assumed that all free diving was unsafe, a position this Court rejected.[1] His testimony about what a free diving manual *would have said* about descent rates is extremely questionable in light of the fact that he wouldn't allow free diving at all. It certainly doesn't comport with Mr. Gingo's opinion that a safety manual would have not prevented the accident. (Volume 3, 234:24-236:17)

---

[1] Mr. Almaraz presented no evidence that any other company whose divers' activities were governed by the OSHA or Coast Guard regulations adopted his same position. Given that the Court has rejected his fundamental assumption that free diving is inherently unsafe, it should reject his contention about what an Operations Manual would provide unless he had submitted evidence of other dive contractors. In fact, should the Court want further testimony about this, we would be prepared to submit evidence from the Association of Diving Contractors, many commercial diving contractors, and Mr. Gingo as to what Operations Manuals in the industry address and why pre-determined descent rates are not prescribed and unnecessary to prevent barotrauma.

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

ISI.MacDonald

DEFENDANT'S POST REMAND OPPOSITION BRIEF

10

Case No. CV 02-00084 ACK LEK

More significantly, Mr. Almaraz's testimony didn't establish a physiological reason why descending in excess of 70 feet per minute might be dangerous or that it had any relationship with the injury here.[2] Everyone who testified on the subject, including Mr. Almaraz, agreed that the key to avoiding barotrauma is common sense – if a diver feels pain or excess pressure or has difficulty clearing, he should simply return to the surface.[3]

We reiterate the uncontradicted evidence how barotrauma occurs. The evidence established that the risk of barotrauma is actually greater in the first ten to thirty three feet of a dive than in diving deeper than that. Defendant's expert ENT physician, Dr. Jackler, and its free-dive expert, Glennon Gingo explained why.

Dr. Jackler explained (at Volume 3, pp. 15:1 – 20:4) that as one descends in the water column, a pressure differential builds up between the air filled middle ear and the fluid filled inner ear. The air in the middle ear is compressed as the ambient pressure increases on descent, but the fluid in the inner ear does not. In order to equalize the pressure in both spaces, the diver

---

[2] Although the Court admitted some testimony about descent rates over defendant's objection, plaintiff's counsel conceded he wasn't seeking expert opinion concerning the topic and the Court subsequently barred any further testimony on the subject. Volume 3, pp. 172:24 – 176:10

[3] Dr. Jackler, Volume 3, p.20:14-16; Glennon Gingo, Volume 3, pp. 233:11-234:12; Dr. Schindler, Volume 1, p. 84:2-9; Mark Almaraz, Volume 3, p. 211:16-19; Sean Hunadi, Volume 2, pp. 95:19-96:14.

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

DEFENDANT'S POST REMAND OPPOSTION BRIEF

must push air from his lungs through the eustachian tube into the middle ear. Failure to do so causes pain and, if the diver continues to descend, can cause a suction drawing fluid into the middle ear from the inner ear (the explosive mechanism) or the sudden release of pressure in the inner ear which pushes against the ear drum, both of which can cause tearing in the round or oval window. Dr. Jackler confirmed that the physics of the pressure changes are greatest in the first ten feet of descent. (Volume 3, pp. 19:23 – 20:4.) Mr. Gingo confirmed this in his testimony as well (Volume 3, p. 236:2 – 10.)

The speed of descent is irrelevant to barotrauma so long as a diver can equalize the pressure in his ears. As noted above, if a diver can't equalize and feels pain, he can and should simply surface. Moreover, plaintiff's testimony made it clear that he could and did clear his ears on the date of his accident without any problems. His testimony was as follows:

Q:     Did you have any trouble equalizing that first time?

A:     No, not at all.

Q;     Then what happened?

A:     Then I proceeded going farther down. The next time I felt pressure again I equalized again. Then I kept going farther down. And, when I was about three feet off the bottom, I felt pressure again and I equalized. …

Q:     That's when you equalized for the last time on your descent?

A:     Yeah, that's correct.

Q:     Was  it painful at all?

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 438-4601

DEFENDANT'S POST REMAND OPPOSITION BRIEF

A:    No.  I didn't feel any pain at all.

Q:    Had you felt any sharp pain before the attempt to equalize?

A:    No. No sharp pains, no nothing out of the ordinary, just pressure.

Volume 2, pp. 174:21 – 175:10.


Neither was plaintiff in a hurry.  As he also testified:


Q:    Now, let's be clear about what happened during the dive.  Depth wasn't really a problem for you, was it?

A:    I don't think so.  I don't know.

Q:    I mean, when you got to the bottom, you weren't fatigued?

A:    No.

Q:    You weren't winded?

A:    No.

Q:    You weren't out of breath?
A:    I only had one breath to have.  So I wasn't out of that breath, no.

Q:    You hadn't begun to expel air?

A:    No.

Q:    You weren't feeling panicky?

A:    Not at all.

Q:    In fact, you felt you could have gone even deeper?

A:    I felt comfortable until I blew my - - until I blew that last time and - -

Q:    Just to be sure we're clear, did you feel that you could have gone even deeper?

A:    **Probably, yeah.  Sure.**


Volume 3, pp.114:15 – 115:9.

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 438-4601

ISI.MacDonald

DEFENDANT'S POST REMAND OPPOSTION BRIEF

Case No.  CV 02-00084 ACK LEK

In short, there is no evidence that plaintiff exceeded Mr. Almaraz's non-supported "safe descent rate," that an operations manual for free-diving would have established such a rate, or that the speed of his dive physiologically caused the accident at all.  The evidence is to the contrary. Simply put, the plaintiff has failed to meet his burden of showing that the lack of a safety manual setting forth a safe descent rate was in any way related to, much less a cause of, his accident.

## V.    **THE PENNSYLVANIA RULE IS IRRELEVANT HERE**

As noted above, plaintiff has focused primarily on attempting to convince this Court to apply the *Pennsylvania* rule, because he knows full well this Court's Findings of Fact made it clear that the lack of a safety manual concerning commercial diving activity played no role whatsoever in his accident.

Plaintiff's Opening Brief asserts that the Ninth Circuit has approved application of the rule in Jones Act cases and that this is the majority position in the circuits, basing his contention on the Alaska Supreme Court's decision in *Marine Solution Services v. Horton,* 70 P.3d 393 (Alaska 2003).  This is at best a simplistic analysis of when the rule is applied in Jones Act cases.

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 438-4601

DEFENDANT'S POST REMAND OPPOSTION BRIEF

Indeed, we believe it misses the essential point – this burden shifting rule is very seldom applied in Jones Act cases.

The *Pennsylvania* rule arose out of a vessel collision. *The Pennsylvania*, 86 U.S. [19 Wall.] 125, 136 (1873). It has never been given the wide application to all Jones Act cases as urged by plaintiff here. Indeed, even though the rule was established in admiralty case law 85 years before the Supreme Court decided *Kernan* (which also involved the violation of a Coast Guard navigation regulation related to collision avoidance), the *Kernan* Court didn't introduce the presumption of causation of the *Pennsylvania* Rule into Jones Act cases. *Wilkins v. American Export Isbrandtsen Lines, Inc.,* 446 F.2d 480, 484 n.8 (2d Cir. 1971).

The few reported cases in which the *Pennsylvania* Rule has been applied to Jones Act cases generally only apply to man-overboard situations or cases involving violation of a Coast Guard navigation rule, and only then when there is a reasonable causal connection between the Coast Guard violation and the accident. *See Reyes v. Vantage Steamship Co., Inc.* 609 F.2d 140 (5th Cir. 1980); *In re Seaboard Shipping Corp.*, 449 F.2d 132 (2d Cir. 1971).

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

ISI MacDonald

DEFENDANT'S POST REMAND OPPOSITION BRIEF                    Case No. CV 02-00084 ACK LEK

In rescue-type cases, there is good reason to place the burden of rebutting a presumption of causation on the defendant because "the shipowner is charged with the highest degree of diligence to save a seaman who has gone overboard." 1B-III Benedict on Admiralty § 26.

Application of the rule has generally been rejected, however, in typical Jones Act cases. The Second Circuit explained why:

> The logical probability that fault of the ship is the cause of a collision is based on wide experience in maritime navigation and is authoritatively attested to by Professors Gilmore and Black, who report:
>
> "The collision case is rare in which there is not at least some arguable reason for regarding both vessels at fault * * *" G. Gilmore & C. Black, The Law of Admiralty, 408, § 7-6 (1957)
>
> Moreover, The Pennsylvania rule might be regarded as fair because each ship involved in a collision has superior means to the access of evidence bearing on fault. However, no such considerations apply to the idiosyncrasies of information which bear on the cause of an injury sustained by a seaman.

*Wilkins v. American Export Isbrantsen Lines, Inc.* 446 F.2d 480, 485 (2d Cir., 1971).

Contrary to plaintiff's contention, the majority of Circuit Courts do not apply the *Pennsylvania* Rule in Jones Act cases. *Pierro v. Carnegie-Illinois Steel Corp.* 186 F.2d 75 (3d Cir. 1950) In *Pierro*, the plaintiff widow challenged the district court's denial of her requested presumption of

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

causation based on defendant's operation of its vessel with a "short crew" when her husband died, in violation of 46 U.S.C.S. § 222. *Id.* 76-77. The Third Circuit held that the presumption was only applicable when "determining fault of vessels involved in disasters." *Id.* at 78. Since its ruling in *Pierro*, no Third Circuit case involving the injury or death of a seaman has applied the *Pennsylvania* Rule where no collision has occurred. *Mawari v. Interocean Ugland Mgmt. Corp.* 1999 U.S. Dist. *LEXIS* 15797, *4.

The Second Circuit has also refused to apply the *Pennsylvania* Rule to Jones Act cases. The court first considered this issue in *Wilkins, supra,* 446 F.2d 480. In *Wilkins,* the plaintiff brought a wrongful death action against the owner of the ship on which the decedent was serving. *Id.* at 481. The plaintiff alleged that the overtime work which was required by defendant, in violation of 46 U.S.C.S. §§ 235 and 673, was the proximate cause of decedent's heart attack. *Id.* The Second Circuit refused to apply the rule:

> Finally, as a judgmental matter, we are not persuaded that there are broad considerations of policy which require that we extend the admiralty rule of The Pennsylvania beyond the chosen area of ship collisions to embrace Jones Act cases.

*Wilkins,* 446 F.2d 485-86.

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

The Second Circuit recently confirmed this position. *See Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2d Cir. 2004). In *Wills*, the court gave no weight to the claim that it was necessary to apply the presumption of causation in order to compel defendants' compliance with safety obligations and found no compelling reason to depart from its prior precedents. *Id.* at *29-*30.

In the present case, there is no compelling reason to shift the changing the burden of proof regarding the safety violation from appellant to Kahikolu. The regulation violated by Kahikolu had nothing to do with a man overboard situation, avoiding collisions or even the navigation of a vessel at all. **In fact, the cited regulation isn't solely addressed to vessel owners acting in the capacity of vessel operators.** Rather, the applicable Coast Guard regulations govern *diving activity*, whether from a vessel **or a** fixed "facility."[4] While the regulations require "the diving supervisor" to provide the Operations Manual to the "person-in-charge" of the diving operations, neither of them is required to be a member of or even employed by a vessel operator. *See, 46 C.F.R.* §§ 197.420 (a) (1), 197.402 (a) and 197.404 (a).

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

---

[4] A "facility" is defined at 46 C.F.R. § 197.204 as a "deepwater port, or an artificial island, installation, or other device on the Outer Continental Shelf subject to Coast Guard jurisdiction."

Even the most cursory review of these sections makes it clear that they do not apply to vessel navigation.

Plaintiff implies, nonetheless, that *Marine Solutions, supra,* (citing *Matthes v. The Clipper Fleet,* 774 F.2d 980 (9th Cir. 1985)) makes it clear that the Ninth Circuit rule applies the *Pennsylvania* Rule to virtually Jones Act cases involving Coast Guard violations. That's just not true.

*Marine Solutions* involved a seaman injured in a near collision incident. The plaintiff was struck by a line which swept across the deck when the tug captain gave a tug and barge full power to avoid another barge tied up alongside a dock. He argued that his employer violated two Coast Guard safety regulations: (1) the tug captain did not have a Coast Guard license authorizing him to navigate a vessel the size of that tug, and (2) that the defendant violated Rule 5 of the Convention on the International Regulations for Preventing Collisions at Sea, which required a proper look-out to minimize the risk of collision. The Alaska Supreme Court noted that "The license requirement is mandatory and was enacted to establish 'the complement necessary for the safe operation of vessels.' 46 C.F.R. § 15.101" (*Id., FN 48 at 408*). It therefore rejected defendant's contention that the

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

ISLMacDonald

DEFENDANT'S POST REMAND OPPOSTION BRIEF

19

Case No.  CV 02-00084 ACK LEK

*Pennsylvania* rule should not be applied because no collision actually occurred.

Despite the fact that the case involved Coast Guard regulations related to vessel navigation and collision avoidance, the Alaska Supreme Court stated, in *dicta,* that the *Pennsylvania* rule applies in non-collision Jones Act cases involving a Coast Guard violation. We note that a state appellate court decision is not binding in a federal Jones Act case, much less mere *dicta* in a decision. But do the cases it cited support this broad proposition? They don't.

The main case the Alaska Supreme Court cited was *Mathes v. The Clipper Fleet,* 774 F.2d 980 (9th Cir. 980). In *Mathes,* the appellant suffered an injury to his ankle when passing boxes from his supply boat to another vessel. *Mathes, supra,* 774 F.2d at 981-2. On appeal, the appellant argued among other things that the *Pennsylvania* Rule applied because the vessel violated Coast Guard regulation 46 C.F.R. §185.10 (1984) by failing to have a local endorsement of a crewmember's credentials physically aboard the ship. *Id.* at 983.

The *Alaska Supreme* Court noted that *Matthes* stated that: "The *Pennsylvania Rule* has often been applied in this circuit," (*Matthes, surpra,*

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

p. 982 ; *Marine Solutions, supra*, p. 406)  What it failed to mention was that none of the cases cited by *Matthes* for this proposition were Jones Act cases.[5]

The Alaska Supreme Court further implied that the Fifth Circuit had approved the general extension of the *Pennsylvania* rule to Jones Act cases, citing language in *U.S. v. Nassau Marine Corp., et al.* 778 F.2d 1111 (5th Cir. 1985) that "the rule has been reformulated to apply to 'any statutory violator' who is party to a maritime accident.'" *Id, at p. 1116.*  The *Nassau Marine* case, however, involved the sinking of a vessel due to violation of a Coast Guard regulation, and the Fifth Circuit's reason for applying the *Pennsylvania* rule underscored the difference between that case and the one at bar:

> **"The Rule has, however, been criticized as a 'drastic and unusual presumption,' and generally has been limited, at least in cases not involving collisions and allisions, to violations of statutes intended to prevent the injury that actually occurred.** *Director General of India Supply Mission v. S.S. Maru,* 459 F. 2d 1370 (2d Cir. 1972), *see also* G. Gilmore & C. Black, *The Law of Admiralty* § 7-5 at 494 (2d ed. 1975). In this case, there is no doubt that the regulation was designed in part to prevent a sinking due to discoverable structural failure."

---

[5] *Waterman Steamship Corp. v. Gay Cottons*, 441 F.2d 724 (9th Cir., 1969) involved cargo damage arising out of a collision; *The Denali*, 105 F.2d 413 (9th Cir. 1939) involved a stranding; *The Princess Sophia*, 61 F.2ds 339 (9th Cir. 1932), also involved a collision.  All of these cases involved violation of navigation and collision avoidance regulations. *See, also, Pennzoil Producing Co. v. Offshore Express, Inc.,et al.*, 943 F.3d 1465 (5th Cir. 1991), *Candies Towing Co. v. M?V B & C Eserman*, 5th Cir. 1982), cited by the *Marine Solutions Court*, which involved an allision and a grounding, respectively.

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

199 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 436-4601

ISI.MacDonald                        21                      Case No.  CV 02-00084 ACK LEK

DEFENDANT'S POST REMAND OPPOSTION BRIEF

*Id., at p.1116, emphasis added.*

In short, the Alaska Supreme Court failed to cite a single Jones Act case in the Ninth or any other Circuit finding liability in a Jones Act case because of application of the *Pennsylvania* rule. It also ignored the fundamental ruling of the *Matthes* Court, which refused to find liability based on the *Pennsylvania* rule because of the limited scope of that rule.

In *Matthes,* the Ninth Circuit rejected application of the rule because:

> We agree with the district court that this violation does not bring into play the *Pennsylvania* Rule because there is ***no conceivable causal connection between the violation and the injury.*** As the Supreme Court said in *The Pennsylvania* itself, "it must be conceded that if it clearly appears the fault could have had nothing to do with the disaster, it may be dismissed from consideration." 86 U.S. [19 Wall.] at 136. *See also Gosnell v. United States,* 262 F.2d 559, 563 (4th Cir. 1959)("***where it [is] evident that the breach of statutory duty . . . did not cause the accident***" the *Pennsylvania* Rule does not apply); *Seaboard Tug & Barge v. Rederi AB/Disa,* 213 F.2d 772, 775 (1st Cir. 1954) (in applying the *Pennsylvania* Rule, ***the courts "are limited to the reasonable possibilities"***) (quoting *The Mabel,* 35 F.2d 731, 732 (2d Cir. 1929)).

*Id.* (emphasis added).

In doing so, it cited *Gosnell v. U.S.* , 262 F. 2d 559 (4th Cir. 1959) with approval. The *Gosnell* case involved the death of vessel passengers in the sinking of a fishing vessel. The underlying District Court refused to find liability based on the *Pennsylvania* rule, holding that a maritime plaintiff personal injury plaintiff liable must show: (1) the physical cause of his injuries; (2) fault on the part of the person sought to be held responsible; and

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

(3) a causal connection between such fault and the physical cause. The Fourth Circuit affirmed, holding that:

> "We cannot believe that the Supreme Court in the Pennsylvania intended to establish as a hard and fast rule that every vessel guilty of a statutory fault has the burden of establishing that its fault could not by any stretch of the imagination have had any causal relation to the collision no matter how speculative, improbable or remote."

> *Id., at p. 564*

**The *Matthes* holding is thus in keeping with other cases addressing why the *Pennsylvania* rule is often found inapplicable in various contexts, not just in Jones Act cases.** In order to invoke the *Pennsylvania* Rule, appellant must establish a nexus between the violation and the injury. If the appellant does not establish a causal connection, then the *Pennsylvania* Rule is not applied. *See, e.g. Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.*, 295 F.3d 108, 115-16 (1st Cir. 2002) ("even if there were credible evidence of a statutory violation by the appellees, any such violation was not sufficiently related to the casualty in question . . . and the district court properly refused to apply the *Pennsylvania* rule."); *American River Trans Co. v. Kavo Kaliakra SS*, 148 F.3d 446, 450 (5th Cir. 1998). As we have explained, the Supreme Court in *The Pennsylvania* did not intend to establish a hard and fast rule that every vessel guilty of a statutory fault has the burden of establishing that its fault could not by any stretch of the imagination have

COX, WOOTTON, GRIFFIN & HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

ISI.MacDonald

DEFENDANT'S POST REMAND OPPOSITION BRIEF

23

Case No. CV 02-00084 ACK LEK

had any causal relation to the collision, no matter how speculative, improbable or remote."); *In re Complaint of Nautilus Motor Tanker Co.*, 85 F.3d 105, 115 (3d Cir. 1996) ("In cases where there is no clear link between the statutory violation and the casualty, the party seeking to take advantage of the [Pennsylvania] Rule has been required to make some showing that the statutory violation may have had some relation to the accident. Indeed, a contrary rule, such as is urged upon us by appellants, would result in a presumption of liability following any statutory violation no matter how remote or inconsequential such a violation may have been to the subsequent accident. Neither precedent nor logic compels such a drastic result."); *Candies Towing Co. v. M/V B & C Eserman*, 673 F.2d 91, 94 (5th Cir. 1982) (noting that invocation of Pennsylvania Rule does not impair principle that in Jones Act cases, cause in fact is still necessary).

In short, plaintiff's argument that *Matthes* generally approved application of the rule to Jones Act cases is grossly overstated. Tellingly, even though *Matthes*, unlike our case, involved a Coast Guard regulation related to vessel navigation (i.e., requiring a license endorsement for the safe

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 438-4601

ISI.MacDonald

DEFENDANT'S POST REMAND OPPOSTION BRIEF

24

Case No.  CV 02-00084 ACK LEK

navigation of the vessel), the Court rejected application of the Pennsylvania rule because there was no conceivable connection with the accident[6].

Turning back to our case, Plaintiff has alleged three theories why the lack of an Operations Manual somehow caused his accident. We explained above why the "descent rate argument" didn't explain any conceivable causal connection between the Coast Guard regulation involved here and the plaintiff's accident. His other theories are even weaker.

Plaintiff's second theory is that a safety manual would have had an illness reporting requirement. He argues that if defendant's supervisor had inquired of plaintiff's condition the morning of his dive, the accident wouldn't have happened. This pre-supposes that that he had an illness which would have precluded him from diving. That's just not true.

Plaintiff argues that Dr. Jackler opined that he saw evidence that the plaintiff had "active sinusitis" on September 24 which "may have" contributed to problems opening the Eustachian tube and clearing his ears with plaintiff even knowing it. (Opening Brief, pp. 7-8). In doing so, he carefully ignored Dr. Jackler's ultimately conclusion, i.e., that plaintiff was

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

199 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

---

[6] Plaintiff's Opening Brief claims that "Kahikolu does not dispute its vessel was operated in violation of a statute ..." (Opening Brief, p. 2). We most certainly do dispute this and for good reason – as noted above, the alleged violation pertained to commercial SCUBA diving and had absolutely nothing to do with the navigation of a vessel.

medically fit to dive.

Dr. Jackler's testimony about the issue is at Volume 3, pp. 59 – 3-64.

He testified that plaintiff had "active" maxillary sinusitis (i.e., in his nose and

related to the upper teeth, tear duct and floor of the orbital cavity).  When

asked if it was symptomatic on the day of the dive, he responded that "*I*

*think it's unlikely that he was symptomatic."* **(Volume 3, p. 62:7-10)**  He

explained that the symptoms one suffers from active sinusitis go away

quickly, but can leave boggy, thick mucosa which can last for months.  His

key testimony, however, was as follows:

> **Q:**   **Doctor, are you prepared to say that Mr. MacDonald should not have been diving on September 24?**
>
> **A:**   **No, it's a relative kind of thing. ... I would not have made an absolute prohibition, but I would have warned him to be cautious. ...  (Volume 3, pp. 62:21-63:15)**

Plaintiff's counsel also completed ignored the testimony of Dr.

Schindler on the subject. (Volume 2, pp 47:18 – 48:18).  Dr. Schindler

testified that if a patient like Mr. MacDonald had come to him on a clinical

basis three weeks after treatment for sinusitis and asked for his advice about

diving, he would have examined his ear, asked if he had any trouble clearing,

and "I would tell them, if you can come down and clear your ear, you

probably could clear your ear and you can fly or dive." Even more directly,

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

199 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 438-4601

ISI.MacDonald                                                            Case No.  CV 02-00084 ACK LEK

DEFENDANT'S POST REMAND OPPOSTION BRIEF

he testified:

> **Q:** **What if the patient had told you      that during the weeks  between September 2d and September 24th he had made dives to 20 - - 10, 15, 20 fee without any problems?**
>
> **A:** **Then I would presume he can make the dive.**
>
> Volume 2, p. 49:9 – 12. [7]

In fact, plaintiff himself testified that he made the dive without any

problems clearing.  Although difficulty clearing one's ears is noted in the

first ten feet of a dive,[8] plaintiff admitted he had no difficulty clearing in his

first or second dive. He even denied difficulty clearing the third time,

denying he felt any pain and nothing more than normal pressure.  (Volume 2,

pp. 174:21 – 175:25.)  In short, there's absolutely no evidence that supports

the proposition that he would have been kept out of the water even if a dive

manual had required him to report an illness before diving.  There's no

evidence whatsoever he had any symptoms related to his sinusitis and both

medical experts agreed they'd have let him dive.[9]

Finally, plaintiff argues, based again on Mr. Almaraz's opinions that a

Dive Safety Manual would have prevented "significant, unrestrained

competition amount its divers." (Opening Brief, p. 5).  The essence of his

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 438-4601

---

[7] *See, Ex. B, Bate Stamp 2, 23-25, and 66-70, confirming these dives.*
[8] *See, Gingo testimony, Volume 3, pp 235.1- 236:12, Dr. Jackler, Volume 3, pp. 19:23 – 20:4*
[9] *Further, the testimony of Sean Hanudi was that plaintiff was advised never to dive if he was having symptoms anyway.  Volume 2, pp. 95:16 – 96:10*

Case No.  CV 02-00084 ACK LEK

testimony was that that a safety manual for commercial, compressed air divers would have enhanced the company's "safety culture." He did not establish how this would have prevented the subject accident **except that it would have prevented dives below 20 feet**. This of course is based on conclusion was that free diving is inherently unsafe. The Court specifically found to the contrary. His "safety culture" argument is precisely the type of "vague" causation claim which precludes application of the *Pennsylvania* rule.

In *Moody v. Boston and Maine Corporation,* 921 F.2d 1 (1st Cir. 1990) for example, the plaintiff widow appealed a summary judgment against her FELA claim. The basis of her claim was that the employer violated the regulatory work hour restrictions of the Hours of Service Act, 45 U.S.C. § 62, thereby causing the decedent's heart attack. In opposition to the summary judgment motion, her medical expert opined that "the severe stress at work" was a contributing cause of the accident. The appellate court reviewed the record and, noting that the expert addressed causation " in only the vaguest terms," confirmed the absence of any evidence that the violation "played any part, even the slightest" in causing decedent's heart attack.

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA 94105
TEL (415) 438-4600
FAX (415) 438-4601

We submit that the "proof" of causation here is as vague as that offered in *Moody*.  Not only has this Court already concluded that diving to 47 feet was not unsafe, the plaintiff admitted that the depth of the dive wasn't a problem for him.

In short, plaintiff has failed to show that the regulation involved here had anything to do with vessel navigation, collision avoidance, or man overboard situations.  That's why the present case, like *Mathes*, should not bring into play the *Pennsylvania* Rule.  Simply put, (1) the violation of Coast Guard regulations related only to dives involving scuba divers, (2) an operations manual was not statutorily required for appellant's free dive nor would it have imposed the restrictions Mr. Almaraz hypothesized might be necessary, and (3) the plaintiff has not established any conceivable causal connection between the lack of a safe operations manual for SCUBA diving and his injury.

///

///

///

///

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 438-4601

ISI MacDonald

DEFENDANT'S POST REMAND OPPOSITION BRIEF

Case No.  CV 02-00084 ACK LEK

## VI.  **CONCLUSION**

We respectfully submit that the Court should again find for the defendant, rejecting his specious claims for *per se* liability and liability based on the *Pennsylvania* rule.

Dated: October 2, 2006

COX, WOOTTON, GRIFFIN,
HANSEN & POULOS, LLP
Attorneys for Defendant KAHIKOLU, LTD.
dba Frogman Charters

By: _____
        Richard C. Wootton

COX, WOOTTON,
GRIFFIN
& HANSEN, LLP

190 THE EMBARCADERO
SAN FRANCISCO,
CA  94105
TEL (415) 438-4600
FAX (415) 438-4601

ISI MacDonald

30

DEFENDANT'S POST REMAND OPPOSTION BRIEF

Case No.  CV 02-00084 ACK LEK