
# ORIGINAL

Of Counsel:

CRONIN, FRIED, SEKIYA,
 KEKINA & FAIRBANKS

PATRICK F. McTERNAN        4269-0
HOWARD G. McPHERSON    5582-0
600 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 524-1433
Facsimile:  (808) 536-2073
E-mail:    cfskf@croninfried.com

MCGUINN, HILLSMAN & PALEFSKY

JOHN R. HILLSMAN (*Pro Hac Vice*)
535 Pacific Avenue
San Francisco, California  94133
Telephone: (415) 421-9292

Attorneys for Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 1 7 2006

at 2 o'clock and 45 min P M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER MacDONALD,<br><br>   Plaintiff,<br><br> vs.<br><br>KAHIKOLU, LTD., dba Frogman<br>Charters,<br><br>   Defendant. | ) CIVIL NO. 02-00084 LEK<br>)<br>)<br>) PLAINTIFF'S POST-REMAND REPLY;<br>) EXHIBITS "A"-"E"; CERTIFICATE OF<br>) SERVICE<br>)<br>) HEARING:<br>) DATE:  October 27, 2006<br>) TIME:  9:30 a.m.<br>) JUDGE: Hon. Leslie E. Kobayashi<br>)<br>) Trial: May 20-22, 2003<br>) |

## I.    SUMMARY OF REPLY

Contrary to Kahikolu's belabored assertions, the Ninth Circuit's application of the *Pennsylvania* Rule to seamen's injury cases is quite well established, and this is easily shown in its historic precedent.

Kahikolu's insistence that this Court's prior Findings and Conclusions have already effectively decided the remand issue is simply absurd – and strongly belied both by Kahikolu's admissions at oral argument before the Ninth Circuit, and the Panel's summary rejection of Kahikolu's post-decision Petition for Rehearing raising the exact same points.

Kahikolu's factual arguments are just all wet too, and obviously so.  Just about everyone knows divers need to use a safe descent rate – the U.S. Navy says so in its officially published U.S. Navy Diving Manual.  And Kahikolu's own expert Dr. Jackler's testimony contains the statement that he would have advised Chris MacDonald to be cautious about diving with lingering head cold symptoms, in addition to his opinion that those symptoms may have played a role in causing this accident.  But Kahikolu is not about being cautious.  The reverse is true.  It encourages its divers to competitively push their limits.  And to top it all off, Kahikolu contends that what would have happened if it actually complied with Coast Guard diving regulations, in terms of restraining that competition, is too vague for the Court to consider – we say that's self-serving nonsense.

## II.    THE *PENNSYLVANIA RULE*

In *The Princess Sophia,* 61 F.2d 339 (9th Cir. 1932), the Ninth Circuit

applied the *Pennsylvania* Rule to "claims presented for the wrongful death of

passengers <u>and crew</u> on board the steamship Princess Sophia." *Id.* at 340

(emphasis added). The ship ran aground – there was no collision with another

vessel, and therefore no consideration of the Rule being "regarded as fair because

each ship involved in a collision has superior means to the access of evidence

bearing on fault" – which Kahikolu argues is a necessary policy underpinning.

Opp. at 16, quoting *Wilkins v. American Export*, 446 F.2d at 485 (2nd Cir. 1971).

Nor was there only a duty to rescue in a man overboard situation – the

inquiry was far broader. The Ninth Circuit considered alleged violations by the

Canadian ship of "a number of provisions of American law as to life-saving

appliances, including line-carrying projectiles, lifeboats, and life-saving gear, as

well as to the manning of the lifeboats, strength of davits, <u>condition of the radio</u>

<u>service</u>, and the <u>sufficiency of the crew in general</u>." *Id.* at 347 (emphasis added).

Although it ultimately found no statutory violation occurred, the *Sophia*

court's detailed, broad analysis kills Kahikolu's belabored survey of what some

courts outside the Ninth Circuit have done with the *Pennsylvania* Rule – and the

narrowing constructions some of them have used – because they just don't matter.

As everyone knows, "district courts in a circuit owe obedience to a decision of the

3

court of appeals in that circuit". 18 <u>Moore's Federal Practice</u> (3rd ed. 2006) §

134.02[2], p. 134-26 (collecting cases). For good measure, a few years later in *The*

*Denali*, 112 F.2d 952 (9th Cir. 1940), the Ninth Circuit observed the following:

> No one would question that if libeled directly <u>by the</u>
> <u>survivors of drowned sailors</u> or owners of lost cargo, the
> ship's owner would have to meet the burden of the
> *Pennsylvania* rule.

*The Denali*, 112 F.2d at 958 (emphasis added). This is dicta to be sure, since

unlike *The Princess Sophia*, there were no drowned sailors in *The Denali*'s facts –

but it is nevertheless another very clear indication of the Ninth Circuit's inclusive

approach. Indeed, from its earliest decisions construing the Rule, the Supreme

Court itself has not taken a restrictive view, but instead used a broad construction:

> This is a presumption which attends <u>every fault</u>
> <u>connected with the management of the vessel, and every</u>
> <u>omission to comply with a statutory requirement</u> or with
> any regulation deemed essential to good seamanship. In
> The Pennsylvania, 19 Wall. 125, it was said that "in such
> a case the burden rests upon the ship of showing, not
> merely that her fault might not have been one of the
> causes, or that it probably was not, but that it could not
> have been."

*The Martello*, 153 U.S. 64, 74 (1894) (emphasis added).[1]

---

[1] The burden is especially heavy in the Ninth Circuit; *per se* violators like Kahikolu
must affirmatively disprove any causal link between their violation and the ensuing
accident with "clear and convincing evidence." *Fireman's Fund Insurance Co. et
al. v. Big Blue Fisheries, Inc.*, 143 F.3d 1172, 1176 (9th Cir. 1998).

Commentators agree: "the coverage of the *Pennsylvania* rule has been expanded, from collision cases involving violations of navigation rules to virtually any maritime case in which the 'plaintiff can establish both that the defendant breached a statutory duty and that the breach is relevant to the casualty in question.'" Robertson & Sturley, "Recent Developments in Admiralty & Maritime Law," 27 Tul.Mar.L.J. 495, 546-47 (Summer 2003) quoting *Pan American Grain Mfg. v. Puerto Rico Ports Auth.*, 295 F.3d 108, 115 (1st Cir. 2002).

The reasonable conclusion from this Ninth Circuit precedential history, and from scholarly commentary, is that the Alaska Supreme Court got it exactly right reading the Ninth Circuit's more recent *Mathes* decision (which cited *Sophia* and *Denali*) – "the court assumed the Rule applied in the Jones Act case but then concluded that there was no nexus between the violation and the injury." *Horton,* 70 P.3d at 407. And the lack of a nexus found in *Mathes* as a matter of law – i.e., a reasonable, logical connection as Kahikolu likes to term it – is not the case here.

The contrary is true, as the lead judge on the Ninth Circuit Panel hearing our appeal, Judge Margaret McKeown, made abundantly clear at oral argument.

## III.    CAUSAL CONNECTION

Kahikolu tried doggedly to convince the appellate Panel, just as it tries to convince this Court now, that given Your Honor's Findings of Fact and

Conclusions of Law after the trial, there is really no reason to even consider

whether the *Kernan* or the *Pennsylvania* Rule applies to Chris MacDonald's injury.

The argument was greeted in the court above with clear skepticism:

> JUDGE McKEOWN: But is – but is the – <u>even if it's not
> inherently unsafe, that doesn't mean there aren't limits to
> the safety of the sport itself, correct</u>?
>
> MR. WOOTTON: She – <u>that's correct</u>, but she [Judge
> Kobayashi] said it is a safe, easily learned skill. There is
> nothing inherently unsafe about it . . . <u>The test</u>, according
> to the Wills case, <u>is whether there is a logical, reasonable
> connection between</u> the alleged – or between <u>the
> violation and the injury</u> that follows, and I think that's
> part of what has caused all the straining in connection
> with these cases as it arises or as it pertains to both the
> Pennsylvania Rule and the negligence per se rule.
>
> JUDGE McKEOWN: If the testimony is that it's not
> inherently unsafe, but that if you had a dive manual it
> would tell you a level which you shouldn't go without
> appropriate diving gear, <u>why isn't that a logical
> reasonable connection to the violation</u>?
>
> MR. WOOTTON: What I'm saying is that was the
> testimony of their expert. The Court rejected it. The
> Court, if you look at its findings, said this is a safe easily
> learned skill.
>
> JUDGE McKEOWN: <u>It's two different things</u>.

Exhibit A at 13-14 (emphasis added). Still unwilling to give it up, Kahikolu came

back with the exact same arguments -- after the Ninth Circuit handed down its

decision – in a Petition for Panel Rehearing:

> . . . the district court's Statement of Facts, and
> Conclusions of Law make it crystal clear that court
> impliedly found that Kahikolu Ltd.'s failure to comply
> with the Coast Guard regulations did ***not*** play any part,
> ***even the slightest***, in producing Mr. MacDonald's injury.

Exhibit B at 1 (emphasis original). The Panel summarily denied it. Exhibit C.

It is therefore ironic that Kahikolu now argues "While Plaintiff's Opening Brief herein focuses primarily on whether the *Pennsylvania* Rule applies in this case, the Ninth Circuit opinion didn't give this argument enough credence to even mention it, much less order this Court to address it further." Opp. at 8.

As the Ninth Circuit's opinion itself explains, however, "In his Opening Brief [on appeal], he [MacDonald] expressly limited his appeal to his claim that the District Court erred in holding that he failed to demonstrate per se liability under the Jones Act." *MacDonald*, 442 F.3d at 1201. In other words, the Ninth Circuit simply did not consider the issue of the *Pennsylvania* Rule properly before it in the appeal – a very far cry from Kahikolu's pejorative characterization.

Even more tellingly, in its Petition for Rehearing Kahikolu also made the following concession:

> Had the court [Judge Kobayashi] stated that free diving
> *could* be dangerous, or was dangerous at the depth that
> plaintiff was diving when injured, <u>plaintiff would have
> met his slight burden of proof in regard to causation</u>, but
> that simply and clearly was not the case here.

Exhibit B at 6 (first emphasis original, underscore added).

We are confident Your Honor will find that the record amply supports that free diving certainly was or could be dangerous at the depth the Plaintiff was diving when injured. Under Kahikolu's own formulation, that suffices to establish causation under the applicable Jones Act standard.

## IV.    DESCENT RATE

Kahikolu's arguments on using a safe descent rate are almost amusing. Anyone who has actually worked as a diver and received proper training knows that a safe descent rate is important, and should be followed. The official U.S. Navy Diving Manual is available online, and the Court can take judicial notice of it as a public record. It provides in pertinent part as follows:

> The rate of descent will generally be governed by the ease with which the divers will be able to equalize the pressure in their ears and sinuses, <u>but it should never exceed 75 feet per minute</u>.

Exhibit D at 7-29, § 7-6.4 "Descent" (emphasis added).

Whose leg is Kahikolu trying to pull here?

## V.    ILLNESS REPORTING

Kahikolu's arguments on mandatory illness reporting are similarly disingenuous. After acknowledging that its expert Dr. Jackler testified active sinusitis may have contributed to Mr. MacDonald's injury, it identifies the following bit as Dr. Jackler's "key" testimony:  **"I would not have made an absolute prohibition, but I would have warned him to be cautious. . . ."** Opp.

8

at 26 (emphasis original).  Exactly.  If there were a mandatory illness reporting requirement, at a minimum the divers would have been advised to be cautious about diving after a lingering head cold.  And this would have come from the diving supervisor aboard the vessel in the first instance.  It is thus certainly reasonable to assume that those kinds of discussions -- aboard the vessel, not in a doctor's office -- might have changed the facts of this accident altogether.  Chris MacDonald, or his supervisors James Brents and Phil Kasper, may well have decided it would be better and much more prudent for Mr. Brents to make the subject dive on scuba, instead of risking a deep free-dive.

Kahikolu's argument about Dr. Schindler's testimony deconstructs similarly. Kahikolu points to testimony that had the patient told him he had been making previous dives with a lingering head cold, he would have presumed he could make the dive.  But this ignores that with a mandatory illness reporting requirement in place, Mr. MacDonald would probably not have been making those dives.

Indeed, the record contains ample evidence that diving with a lingering head cold is in fact dangerous.  Co-worker Mark Na'auao testified as follows:

Q.    . . . When did that happen, this free diving when
       you blew out your own ear off the job?  Was it
       before working for Frogman?

A.    While working.

Q.    While working but not on the job?

9

A.    Yes.

* * *

Q.    Okay.  How deep were you free diving at that time?  Do you know?  Do you recall?

A.    Ten feet.

Q.    Did you have a cold?

A.    Yes.

Q.    How long did the problem last from that incident?

A.    About two weeks.

Q.    So, I take it then, you weren't able to dive on the job then during that time?

A.    Yes.  Can you – what was the question again?

Q.    The first question was how long did the problem last.  The medical problem.

A.    Yes.

Q.    You said about two weeks.  Is that about right?

A.    Yes.

Q.    And then during that time the problem was lasting, you weren't able to dive at work; is that right?

A.    Yes.

Exhibit E at 50:22-25, 51:1-2 and 22-25, 52:1-14.

## VI.    UNRESTRAINED COMPETITION

Kahikolu continues its dismissive, disingenuous rhetoric – trying again to persuade us that there is no difference between a free dive to 20 feet or less, and one to 46 feet where Chris MacDonald suffered permanent injury.  This Court, of course, never made any such finding, and the record does not support it.  And Kahikolu conveniently ignores the testimony of its own expert, Mr. Gingo, showing that competitiveness in free diving can indeed result in ear barotrauma.

Beyond that, Kahikolu relies on a single case, *Moody v. Boston & Maine Corporation*, for the proposition that non-compliance with statutory diving regulations is no more connected to a diving accident than generalized stress to a heart attack.  We disagree and are confident the Court will also.

One of the critical fulcrums in this accident was the decision that Chris MacDonald would make the free dive in which he was injured, as opposed to a ready scuba diver.  As Kahikolu itself argued in Opening Statement, a competitive spirit very likely played a role in that decision.  Mr. Gingo's testimony confirms it.

The institution of comprehensive safe diving practices, such as mandatory descent rates, illness reporting, and the like, would have changed Kahikolu's workplace significantly.  There is every reason to believe it would have changed the decision that Chris MacDonald make the dive, requiring instead that scuba diver James Brents make it, thus avoiding the accident altogether.

11

The connection between non-compliance with Coast Guard diving regulations specifically designed to prevent injuries such as ear barotrauma, and this accident, is many steps closer than the very generalized argument in *Moody*. Contrary to Kahikolu's parting shot, therefore, that's why this case should indeed bring the *Pennsylvania* Rule into play. As the Supreme Court put it long ago:

> But when, as in this case, a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. [*The Pennsylvania*, 86 U.S. at 136]

As we would put it today:

> But when, as in this case, <u>a dive vessel</u> at the time of a <u>diving accident</u> is in actual violation of a statutory rule intended to prevent <u>diving injuries</u>, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the accident.

## VII.  CONCLUSION

Plaintiff respectfully requests that the Court find in his favor.

DATED: Honolulu, Hawaii, October 17, 2006.

Respectfully submitted,

PATRICK F. McTERNAN
HOWARD G. McPHERSON
JOHN R. HILLSMAN
Attorneys for Plaintiff

12